*Tagged opinion*



**ORDERED in the Southern District of Florida on April 26, 2024.**

Laurel M. Isicoff, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: | CASE NO. 19-16355-LMI |
| AMERICA-CV STATION GROUP, INC., | Chapter 11 |
| Debtor. | |
| _____/ | |
| OMAR ROMAY, Liquidating Trustee, | ADV. CASE NO. 21-01059-LMI |
| Plaintiff, | |
| vs. | |
| MEDIASET ESPAÑA COMUNICACIÓN, S.A., | |
| Defendant. | |
| _____/ | |

**ORDER DENYING DEFENDANT, MEDIASET ESPAÑA COMUNICACIÓN, S.A.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON STANDING**

This matter came before the Court upon the *Defendant, Mediaset España Comunicación, S.A.'s Motion for Partial Summary Judgment* (ECF #172) (the

"Standing Motion") filed by Defendant, Grupo Audiovisual Mediaset España Comunicación, S.A.U. (f/k/a Mediaset España Comunicación, S.A.) ("Defendant" or "Mediaset"). The Court has considered the Standing Motion, the Response[1] filed by Plaintiff Omar Romay, Liquidating Trustee for the Liquidating Trust of America CV-Station Group, Inc. ("Plaintiff" or the "Liquidating Trustee"), and the Reply[2] filed by Mediaset.

This action is brought by the Liquidating Trustee appointed pursuant to the terms of a confirmed plan of reorganization seeking to avoid and recover as a fraudulent transfer a pre-petition payment made by the Debtor (defined hereinafter) to Mediaset. In the Standing Motion, Mediaset argues that the Liquidating Trustee lacks standing to bring this avoidance action and accordingly seeks entry of summary judgment against the Liquidating Trustee. For the reasons stated below, the Court finds that the Liquidating Trustee has standing to pursue the avoidance claims against Mediaset and therefore the Standing Motion is DENIED.

## FACTS AND PROCEDURAL HISTORY

On May 14, 2019, America-CV Station Group, Inc. (the "Debtor") filed a voluntary petition in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") for relief under Chapter 11 of Title

---

[1] *Liquidating Trustee Omar Romay's Omnibus Response to Defendant's Three Motions for Summary Judgment* (ECF #182) (the "Response").
[2] *Mediaset's Reply in Support of Its Three Motions for Partial Summary Judgment* (ECF #187) (the "Reply").

2

11 of the United States Code (the "Bankruptcy Code") under Case No. 19-16355-BKC-AJC (the "Main Case").[3]

Before the bankruptcy cases were filed, the Romay Parties[4] on the one hand and the Debtor and Affiliated Debtors on the other were involved in extensive litigation (the "Romay Litigation") which resulted in a claim in the amount of $12,919,740.88 (the "Romay Claim")[5] filed by the Romay Parties in the respective bankruptcy cases. During the chapter 11 cases the Debtor, the Affiliated Debtors, and the Romay Parties settled the Romay Litigation and that settlement (the "Romay Settlement") became an integral part of the Debtor's *Chapter 11 Plan of Reorganization Proposed by America-CV Station Group, Inc.* (Main Case ECF #125)[6] (the "Plan").

The material terms of the Romay Settlement[7], all of which were incorporated into the Plan, provided that: (1) the Debtor shall make a lump sum cash distribution to the Romay Parties on the effective date of the Plan in the amount of $1,550,000.00 (the "Romay Distribution"); (2) the Romay Claim shall be deemed an allowed general unsecured claim; (3) the Romay Parties shall vote

---

[3] Three other companies affiliated with the Debtor also filed for bankruptcy: Caribevision Holdings, Inc. under Case No. 19-16359-BKC-AJC, America-CV Network, LLC under Case No. 19-16977-BKC-AJC, and Caribevision TV Network, LLC under Case No. 19-16976-BKC-AJC. Caribevision Holdings, Inc., America-CV Network, LLC, and Caribevision TV Network, LLC are collectively referred to as the "Affiliated Debtors".

[4] Defined in the Plan (defined hereinafter) as: Omar Alejando Saul Romay, Okeechobee Television Corp., Promisa, Inc., Sherjan Broadcasting, Inc., Telecenter, Inc., and America Teve Network, Inc.

[5] Defined in the Plan (defined hereinafter) as: "the following joint and several claim filed by the Romay Parties in the amount of $12,919,740.88: (i) Claim No. 3-1 in the Caribevision Holdings Case, (ii) Claim Nos. 9-1 and 11-1 filed in this Chapter 11 Case, (iii) Claim No. 20-1 filed in the America-CV Network Case, and (iv) Claim No. 1-1 in the Caribevision Case."

[6] The Court cites entries on the Main Case docket as "Main Case ECF #".

[7] A fully executed copy of the Romay Settlement is attached to the Complaint (ECF #1) as Exhibit A.

3

to accept the Plan; (4) the Debtor will assign its fraudulent transfer claims against Mediaset in the amount of $10 million (the "Fraudulent Transfer Claim") to a liquidating trust (the "Liquidating Trust") the sole beneficiaries of which are the Romay Parties; (5) that the beneficiaries of the Liquidating Trust will choose who will serve as the trustee of the Liquidating Trust pursuant to the terms and conditions of a Liquidating Trust Agreement; (6) the remaining balance of the Romay Claim, after application of the Romay Distribution, will be made solely from any recovery on the Fraudulent Transfer Claim; and (7) the Romay Parties shall not receive any other or further distributions on the Romay Claim under the Plan.

The Romay Claim made up the largest single claim in Class 2 of the Plan (general unsecured claims). Pursuant to the Plan, due to the Romay Settlement, the remaining claims in Class 2 would be paid 70% of any allowed claim.

The Plan provided:

> **On the Effective Date of the Plan,** (i) the Liquidating Trust shall be created and shall be governed by the terms of the Liquidating Trust Agreement, (ii) the Liquidating Trust Assets shall vest in, and be transferred to, the Liquidating Trust, **which Liquidating Trust shall constitute, be <u>appointed</u> as <u>and be deemed a representative of the Estates</u>** pursuant to and in accordance with the terms of Section **1123(b)(3)(B)** of the Bankruptcy Code **solely for the benefit of the Romay Parties**, and (iii) the Liquidating Trust, through the Liquidating Trustee, is and shall be **authorized and appointed** to investigate, **prosecute**, enforce, pursue and settle **the Cause of Action to avoid and recover the Mediaset Transfer** under and pursuant to Chapter 5 of the Bankruptcy Code and applicable non-bankruptcy law, together with the proceeds thereof.

Article V.B. of the Plan (emphasis added). All of the general unsecured creditors that filed ballots voted in favor of the Plan. No creditor objected to the fact that

the Romay Claim was treated differently than the other general unsecured creditors. No party in interest objected to the Romay Settlement or to the provisions of the Plan relating to the Liquidating Trust. [8]

On June 3, 2020, the Bankruptcy Court entered its order confirming the Plan (Main Case ECF #272) (the "Confirmation Order"). The Confirmation Order provided:

> Article V of the Station Group Plan provides for the creation of a Liquidating Trust which shall constitute and be **deemed a representative of the Reorganized Debtor in accordance with the terms of Section 1123(b)(3)(B)** of the Bankruptcy Code with respect to certain claims and causes of action as set forth in more detail in the Station Group Plan.

Confirmation Order at 10 (emphasis added).

The beneficiaries of the Liquidating Trust chose Omar Romay to serve as the Liquidating Trustee. On February 24, 2021, Omar Romay, acting as the duly appointed Liquidating Trustee, initiated this adversary proceeding by filing the Complaint[9] against Mediaset to avoid and recover the $10 million transfer pursuant to 11 U.S.C. §§548 and 550.

---

[8] In its Reply, Mediaset argues it did not receive "adequate notice" of the Plan or the confirmation hearing. Mediaset was not a scheduled creditor or equity holder and did not file a claim in the Debtor's or Affiliated Debtors' bankruptcy cases. Mediaset was later added to the Debtor's schedules as a "notice only" party after the Romay Settlement was reached. Whether and how Mediaset received notice of the Plan is irrelevant to resolution of the issue before the Court. Mediaset had no standing to object to the Plan, the creation of the Liquidating Trust, or the treatment of the Romay Claim. Any Mediaset objection to the Liquidating Trustee's standing to prosecute this action necessarily could only be raised by Mediaset if and when Mediaset was sued.

[9] *Complaint to Avoid Transfer and to Recover Property* (ECF #1) (the "Complaint").

On January 5, 2024, Mediaset filed several motions for summary judgment including this Standing Motion, asserting that Romay does not have standing to bring the Fraudulent Transfer Claim.

## ANALYSIS

"Summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rules 7056 and 9014 of the Federal Rules of Bankruptcy Procedure is appropriate when there exists no genuine issue of material fact and a decision may be rendered as a matter of law." *In re Ortega T.*, 573 B.R. 284, 290-91 (Bankr. S.D. Fla. 2017). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir. 1997). In considering a motion for summary judgment, the Court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* The party moving for summary judgment has the burden of demonstrating that no genuine issue as to any material fact exists and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party meets that burden, the burden shifts to the non-movant, who must present specific facts showing that there exists a genuine dispute of material fact. *Walker v. Darby*, 911 F.2d 1573, 1576 (11th Cir. 1990). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Id.* at 1577 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986)). At the summary judgment stage, the Court

6

will not weigh the evidence or find facts; rather, the Court determines only whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). If there are no material facts in dispute, and only a purely legal question remains to be decided by the Court, then granting summary judgment is appropriate. *Anderson,* 477 U.S. at 247–48.

Both parties agree that there are no genuine issues of material fact with respect to the standing issue and that the Court need only decide questions of law. For the reasons set forth herein, the Court finds that the Liquidating Trustee has standing to prosecute this avoidance action against Mediaset.

Under 11 U.S.C. §548, the bankruptcy trustee (or debtor in possession) has the power to avoid fraudulent transfers incurred by the debtor within two years of the petition date. Where the trustee succeeds in avoiding a transfer under section 548, he may "recover, *for the benefit of the estate*, the property transferred, or . . . the value of such property" from the initial, immediate, or mediate transferee. 11 U.S.C. §550(a) (emphasis added).

A chapter 11 plan of reorganization may "provide for . . . the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any . . . claim or interest" belonging to the debtor or the estate. 11 U.S.C. §1123(b)(3)(B). "Thus, it is a well-settled principle that avoidance powers may be assigned to someone other than the debtor or trustee pursuant to a plan of reorganization." *Zahn v. Yucaipa Capital Fund*, 218 B.R. 656, 662 (D.R.I. 1998) (internal citations and quotations omitted).

Under section 1123(b)(3)(B), a liquidating trustee seeking to assert an avoidance claim must "establish that (i) she was appointed, and (ii) she is a representative of the estate." *Tolz v. Fowler White Boggs, P.A. (In re Key Developers Group, LLC)*, 434 B.R. 712, 715 (Bankr. M.D. Fla. 2010). The showing of appointment "is satisfied if the court has confirmed a plan that provides for the appointment of a representative to enforce the claim." *Guttman v. Martin (In re Railworks Corp.)*, 325 B.R. 709, 718 (Bankr. D. Md. 2005). Mediaset concedes that Plaintiff is the duly appointed Liquidating Trustee but argues that because the Fraudulent Transfer Claim is being prosecuted solely for the benefit of the Romay Parties and not for the benefit of the estate[10], the Liquidating Trustee is not acting as a representative of the estate.

In determining whether the Liquidating Trustee is acting as a representative of the estate, the statute "requires the court to decide whether a successful recovery by the appointed representative would benefit the debtor's estate and particularly, the debtor's unsecured creditors." *Id.* (internal citations and quotations omitted). "The fundamental principle underlying this requirement is that 'post-petition avoidance actions should be pursued in a manner that will satisfy the basic bankruptcy purpose of treating all similarly situated creditors alike; one or more similarly situated creditors should not be able to pursue an avoidance action for their exclusive benefit." *Retail Mktg. Co. v. King (In re Mako, Inc.)*, 985 F.2d 1052, 1056 (10th Cir. 1993) (quoting *Citicorp*

---

[10] *See* 11 U.S.C. §550(a).

8

*Acceptance Co. v. Robison (In re Sweetwater),* 884 F.2d 1323, 1328 (10th Cir. 1989)).

Mediaset argues the Plaintiff lacks standing under sections 550(a) and 1123(b)(3)(B) to bring this avoidance action because any recovery by the Plaintiff would go *solely* to the Romay Parties and therefore this action is not for the benefit of the estate. Mediaset acknowledges that *all* unsecured creditors need not benefit but cites to *In re Kroh Bros. Dev. Co.,* where that court recognized "the long line of cases . . . holding that the avoiding powers cannot be transferred to a single creditor or group of creditors for their *sole* benefit." *Kroh Bros. Dev. Co. v. United Missouri Bank of Kansas City, N.A. (In re Kroh Bros. Dev. Co.),* 100 B.R. 487, 499 (Bankr. W.D. Mo. 1989) (emphasis added). Mediaset argues that because none of the Plaintiff's recoveries will go to the other unsecured creditors, there is no benefit to the estate.

Mediaset primarily relies on three circuit cases. However, those cases are easily distinguishable in that all involved situations where creditors filed Chapter 5 avoidance actions without receiving any kind of bankruptcy court authority or without being appointed pursuant to section 1123(b)(3)(B). *See Nebraska State Bank v. Jones*, 846 F.2d 477 (8th Cir. 1988) (holding that a single creditor lacked standing to file adversary proceedings in the bankruptcy case seeking to set aside fraudulent conveyances of property); *Saline State Bank v. Mahloch,* 834 F.2d 690 (8th Cir. 1987) (holding that a single creditor who sought to avoid perfection of lien under 11 U.S.C. §544(a) did not have standing to do so); *Delgado Oil Co., Inc. v. Torres*, 785 F.2d 857 (10th Cir. 1986) (holding that the Bankruptcy Code

prohibited the continuation of a pre-petition avoidance action of a preferential transfer initiated by an individual creditor against the corporate debtor once the corporate debtor filed for bankruptcy. The court noted that the right to recover a corporate debtor's transfer of its assets which results in the preference of one or more creditors over others rested solely with the bankruptcy trustee once the bankruptcy was filed.)

The law is clear that the determination of whether an action is for the benefit of the estate is decided "on a case-by-case basis." *Zahn,* 218 B.R. at 663. Generally, "courts have interpreted 'benefit' broadly." *Id.* A "benefit to the estate" is not focused solely on the eventual *recovery* itself. *See Official Committee of Unsecured Creditors of Maxwell Newspapers, Inc. v. MacMillan, Inc. (In re Maxwell Newspapers, Inc.),* 189 B.R. 282, 287 (Bankr. S.D.N.Y. 1995) ("This is not to say that unsecured creditors must benefit from a favorable result in the avoidance action; the benefit may come from the transfer of the claim itself through, for example, settlement yielding a benefit to the unsecured creditors").

The benefit to the estate can be indirect. *See id.; Temex v. Hastie and Kirschner (In re Amarex),* 96 B.R. 330, 334-35 (W.D. Okla. 1989) (The court found that unsecured creditors, and therefore the bankruptcy estate, benefitted where a preference action was transferred to the successor of the debtor, in consideration for which, among other things, unsecured creditors received stock in the successor's parent corporation on account of their unsecured claims. The court held that the successor's recovery in the preference action, while directly increasing the successor's own assets, would also benefit successor's parent

corporation and, consequently the debtor's unsecured creditors through their ownership interests in the parent corporation).

Moreover, a benefit to the estate may occur prior to an avoidance recovery. *See In re Maxwell Newspapers, Inc.,* 189 B.R. at 287 (holding the estate benefited where plaintiff was granted right to pursue avoidance claims in exchange for withdrawing $93,000,000 in claims against the estate).

In this case, the Debtor's estate, indeed, the Affiliated Debtors' estates as well, benefitted because the general unsecured creditors benefitted due to the resolution and treatment of the Romay Claim resulting in the other unsecured creditors receiving a 70% distribution on account of any allowed claim, a recovery that would not have been possible otherwise. The Romay Settlement was an integral part of the Plan and absent the Romay Settlement, the general unsecured creditors would have received little or no recovery on account of their claims. Indeed, in the absence of the Romay Settlement it is possible the plans in each of the cases could not have been confirmed.

Because the creation of the Liquidating Trust and the Debtor's assignment of the Fraudulent Transfer Claim provided a benefit to the estate, and because the Liquidating Trustee is acting as a representative of the estate, the Liquidating Trustee has standing to prosecute the Fraudulent Transfer Claim.[11]

---

[11] Nothing in this Opinion is intended to resolve the ongoing debate regarding whether the purchaser of a Chapter 5 avoidance claim pursuant to a section 363 sale has standing to prosecute that purchased claim. The Court will address that issue if and at such time as the issue presents itself. It does not do so here.

Accordingly, for the reasons set forth above, it is **ORDERED**:

1. The Standing Motion is DENIED.

2. The Liquidating Trustee has standing to pursue the Fraudulent Transfer Claim against Mediaset.

### 

Copies to:
Patricia A. Redmond, Esq.
Monique D. Hayes, Esq.

*Attorney Hayes is directed to serve a copy of this Order on interested parties who do not receive service by CM/ECF, and file a proof of such service within two (2) business days from entry of the Order.*